Our first case, case number 24-6244, United States v. Velazquez Hernandez. Counsel? Judge, I've just asked him to start his camera. Okay. Alright. Mr. Lunn, we can see you. You can proceed when you're ready. Can you hear me okay now? Yes, we can. Good. Thank you. I'm sorry. May it please the court. Good morning. My name is Bill Lunn. I represent Sergio Velazquez Hernandez. This case involves the application of the newly revised federal rule of criminal procedure 106, which is known as the rule of completeness. The advisory committee notes seem as if they're almost written for this case. They state that the rule of completeness cannot fulfill its function if a party creates a misimpression and can then object on hearsay grounds and exclude the statements. Counsel, but before you get too far down the road of the merits here, what is our standard of review? Do you agree now that you are on plain error review? No. What is your position? No. Why not? No, because I think the Beach case applies in this case, and that is a situation where all you have to do is to make the court aware of the argument that has been made, and that is what was done in this case. There's no requirement that you cite verbally the rule of completeness. There's no requirement that you state the rule 106, and we have cases, the Cates case and the Halquin case, which is a Supreme Court case. It states that all you have to do is to put the court on notice, and that was done. What did you say about rule 106? Did you specifically invoke rule 106 to the district court? No. But neither did the defense attorney in the Beach aircraft case either, and the court in 1988, the Supreme Court found that the court had been put on notice of the claim that was being made. In fact, in this case, the court, when at the instruction conference, as the defense attorney was reiterating the fact that he should be able to get this information in, the court said that your argument is preserved. I think that the court unquestionably was on notice. So are you asking us, in rule 103, there is some wiggle room to assume that the court understood your objection. If it's the substance is apparent from context. And what in this record should counsel us to conclude that the court understood that you were making this quite precise rule 106 argument in the way that you're advancing it now? The entire argument had to do with his concern about the welfare of his mother. And that was the reason why he had to take the drugs from Los Angeles to Little Rock. And if he didn't do that for this drug lord that was in Mexico, the Mexican drug lord was going to have his mother killed. So it's a relevant issue. His state of mind, which is extremely well shown in the particularly the interview video where he breaks down. Wait a minute. What did you argue to the district court was the misleading things that needed to be straightened out to have this matter admitted? What did you tell the district court? Well, the attorney told the district court that this was this was his story. This was his his. This is when you when you agree when you agree that the rule of completeness requires that be necessary to fully disclose what was going on in light of misleading things from either the context or what the prosecution had put into evidence. Oh, absolutely. Don't you could in fact, you can see don't you can see that's necessary under Ronald Six?  And in fact, the advisory notes. OK, now, no, I want you to go there. I want you to tell me, what did you tell the district court in that regard? What was it that needed to be clarified that it wasn't already clear? Well, he said that this was the most important, powerful piece of evidence that there was in this entire case, and it was unquestionably. He breaks down eight times. Well, all the information that was before the court indicated that he was nervous and that he was upset. All that was already before the court, wasn't it? He was upset because they were going to kill his mother. And that came out during the course of the trial. And but the state of mind, which is what advisory notes now allow you to get into. OK, if you had if you had the information had been included, would there be a statement that I'm so upset because of my mother? That was that was that was covered during the course of his direct examination by the defense attorney. Exactly. And you didn't you didn't need anything more to do that, correct? I don't think so. I think what was at issue here was his state of mind and why he was bringing the drugs from Los Angeles. He was bringing the drugs from Los Angeles because he was being coerced by the drug lord who said that he was going to kill his mother and his state of mind because he broke down emotionally eight times during that interview was exclusively based on his statements that he was worried about the welfare of his mother. It was highly relevant to address defense. Do we need to address your argument as to each piece of evidence? Right. We have to look at it separately for the post arrest interview and then separately for the dash cam. Is that fair? I think they're both almost virtually the same. The police officers pretty much have the same explanation. The officer at the patrol officer says that he can't tell whether it was about his mother. He really couldn't understand. He was crying. It was difficult to understand. And officer Snyder during the interview says he cried through the whole thing, whether we were talking about his mother or whether we were talking about narcotics. And he said that he could not say whether he was crying because he had been caught or about harm to his mother. But when you then play these tapes in the first instance, there's one case which happens within minutes of the time that he the patrol officer gets into his car and he says, my mom, they're going to kill my mom. So that's the first instance. And then the second instance, of course, are the eight times where he literally breaks down and every single time. The reason why he breaks down is he makes a comment about concern over the welfare of his mother. So when when the officers are on the stand saying, well, gee, we just really didn't quite know what this was all about. There's no question when you watch these two tapes, and I hope that you've had the opportunity to do that, that the reason why his state of mind, which the advisory notes say is something that's relevant in the rule of completeness analysis, his state of mind wasn't the reason why he had to take the drug was because they were going to kill his mother if he didn't do that. Does it matter for purposes of our assessment of your 106 argument that the government didn't play the post-arrest interview? Any portion of it? I'm sorry. Is it relevant? Does it matter for purposes of how we think about rule 106 here that the government didn't play any portion of the post-arrest interview? They presented testimony, but they didn't play the video. Does that? How should we be thinking about that? No, I think it is highly relevant because, again, it shows his state of mind. His state of mind is one of extreme agitation, which is based on his fear that now that the situation has arisen with the stop, that the drug lord is now going to kill his mother. That comes across loud and clear. For purposes of putting on the duress defense, it was absolutely critical. You look at the Moore case. Our adversarial system depends on opposing parties offering evidence that will strengthen their respective positions and damage that of their opponent. That's exactly what we have here. The government did not want this evidence whatsoever. Again, the advisory notes state, and they're arguing that it shouldn't be admitted because it's hearsay. The advisory notes state that the party creating the distortion forfeits the right to object based on the grounds of hearsay. They forfeited. That is what the judge should have responded instead of saying, oh, you're right, that was hearsay. In the court's ruling, which he does three times during the course of this trial, the court decides that these other parts of the interview and the traffic stop can't be shown to the jurors. His ruling is based on the fact that it's hearsay. But that's because, Mr. Lamy, it certainly seems that the district court was reasoning in response to the absence of your 106 argument. What you had presented to the district court was that you identified the evidence you wanted in. You explained why it was really important. You said this is important evidence. This is his statement. But you did not present the district court with the same basis of the argument that you're making now in appeal. Well, his comments at the time of Snyder's, the defense attorney's comments at the time of Snyder's, is that it's when he says it's hearsay, the defendant says, the defense counsel says it's an important piece of evidence. It's the first time he tells his story. And that's the reason why it was important. It provides for an explanation of why he's bringing drugs. I mean, for instance, can I ask about the beach aircraft again? Because it seems to me your argument relies heavily upon that case and the idea that you didn't need to tell the district court that you were offering this evidence under the rule completeness or 106 because it should have been obvious. But in beach aircraft, I mean, the issue was the whole trial was about whether or not this crash had occurred due to aircraft malfunction or pilot error. And the witness testimonies, the examination seemed to infer that the witness's opinion was that it was pilot error when really it was misleading. And it was obviously misleading because his whole letter was about aircraft malfunction. So that seems somewhat categorically different. This goes to Judge Murphy's question about what's misleading about the scenario here because the story that he was transporting the drugs to save his mother, that came out at trial. Well, but it didn't come out in terms of what the defendant's state of mind was, which was best exemplified by the recordings. But the officer testified he was crying almost the entire interview. Well, that may be. But just simply to say he was crying without saying why he was crying, why he broke down so many times and every single time he broke down, he made a statement about the welfare of his mother. I thought that you asked the district court at one point to play the video without the  Yes, that's right. We did do that. And the court wouldn't do that either because the court said that that was hearsay, which was not consistent with the advisory notes, which state that the rule actually has been expanded. It covers all statements, including statements made through conduct. So that was another rule of error that the district court made and rules. And when the court makes an error of law, that is by definition and abuse of discretion. And that's what happened in this case. The court consistently three times, actually four, if you include the statement about the conduct four times, the court did not allow this in because of hearsay. And the government had been allowed to basically manipulate the defendant's duress defense by saying that it just really wasn't quite clear what he was crying about when if these items had been presented in full or even if they had been taken out in snippets in the same way that the government did, the government had 20 minutes of snippets to show exactly what the reason was, why the defendant was crying. Then under those circumstances, the defendant's duress defense would have been fortified substantially. It certainly calls into question the validity of the verdict in this case when the jury never saw any of these interviews. I'd like to reserve the remainder of my time. Thank you, Mr. Lund. Mr. Krieger? May it please the court, Stephen Krieger on behalf of the United States. The district court did not abuse its discretion, much less plainly error, when it failed to admit defendants' exhibits one and two under the rule of completeness. Mr. Lund and the court have talked a great deal about the standard of review, and I would submit that it is for plain error. Looking at Beach first, I think Judge Federico gave a very good summary of Beach Aircraft. Ultimately, 106 wasn't an issue in Beach Aircraft, and the court said that it wasn't an issue. But in the footnote where it was explaining preservation, it noted that the counsel who was offering it was interrupted first by proposing counsel and then by the court. What the proposing counsel had said was, talking about the witness, he had been asked to answer every single question Mr. Toothman, the opposing counsel, had respecting, at which point he was cut off by the court. The Supreme Court explained that that was enough, given the context, to put the judge on notice that he was raising a completeness argument. Here on the other hand, the first attempt to admit defense exhibit one, which was the police station interview, happened at page 29 and 30 of Volume 3 of the Record on Appeal, before any evidence was admitted, before any evidence was offered. The rationale that was given was because, as has been said, it was an important piece of evidence. It was the first time he told his story. But Rule 106 doesn't talk about the importance of the evidence or a first time telling one's story. Instead, it says that evidence may be offered, excuse me, the adverse party may require the introduction at the time, at the time that the other evidence is offered. So pre-trial, before any evidence is offered, Rule 106 simply has no application. I would also point out that based on the, it's his story, and based on what both the court and- I'm sorry, Mr. Hart, can I interrupt you for a second? Can you say more about your position that Rule 106 doesn't even apply here, separate from that its requirements may not be satisfied? I wasn't understanding exactly where you were getting at. Okay. I'm talking about at the very beginning. So when he first, when Mr. Hernandez first sought to admit defendants exhibit one, it was before trial. So no evidence had been submitted by the government, nothing about the police station interview had been discussed. And so Rule 106 says, and to quote, if a party introduces all or part of a statement, an adverse party may require the introduction at that time, at the time that the opposing party introduces a portion of the statement, other parts or any other statement that in fairness ought to be considered at the same time. And so since no evidence had been admitted or offered at pages 29 and 30, the attempt to offer defendants exhibit one at that time could not be based on Rule 106. I'll jump ahead to where he sought to admit defendants exhibit one, the second time at page 167 to 68. And when the district court asked if there was any additional rationale, and this is happening at the very end of trial, if there was any additional rationale for admitting that evidence, hearkening back to pages 29 and 30, pretrial, the defendant said no, there was no additional rationale. So I'd submit defendants exhibit one plainly falls outside of being offered for Rule 106. But does it matter for, this is the same question that I asked Mr. Lund, does it matter for the purposes of our review under Rule 106 that the government never offered any portion of the video? In other words, when our cases talk about completing portions, the rule certainly seems broader than that, but I wanted to know what the government's position was on my question. I think, and I'm not sure I've seen any case, at least where this court's addressed it, I think based on the plain text of the rule, if the government had asked, for example, if the government had asked in a murder case, to use the example from the application, or from the committee's notes, is this your gun? And the defendant had said, yes, that's my gun, but I sold it six months ago. And the government testified, had a witness who testified, what did the defendant say? He said, it was my gun, I didn't ask anything else. If the defendant wanted to play the statement rather than ask the witness, I think under Rule 106 he could probably play the statement in light of the portion, the clause, or any other statement. That being said, I think it also is within the broad discretion of the district court to say they admitted it through testimony, you have to admit it through testimony. As this court explained in Harry, the district court under Rule 106 has enormous discretion how to apply the rule. So does it have to be in the same format? This court has never said, and I think it would be within the district court's discretion at that point. Mr. Krager, can I ask you, is the government's position that we should be reviewing this on a plain error analysis, or that there's a pellet waiver here, because the appellant did not argue for plain error in their opening brief, that it's waived and we shouldn't be considering this argument at all? Your Honor, we did argue for waiver, and I'm happy to stand by that. I understand that this court, different panels of this court and different judges have taken positions that criminal defendants can raise plain error in their reply brief and argue for it there, and it's no longer considered waived. Mr. Lund, with due respect, is a very distinguished attorney. He had the opportunity to argue it in his opening brief, and he chose not to do it. We would stand by waiver, but this court ultimately doesn't have to reach it if it chooses not to because it could say it's not plain error. The government makes an argument in your brief about under Rule 403, and if we're under the plain error standard of review framework, what are we supposed to do with your Rule 403 argument? Your Honor, and I understand in our brief, we tied it more towards the first prong. I think it probably settles better in the third prong of plain error, third prong asking whether there's, but for the error, is there a reasonable likelihood of a different result? And 403, applying it under the third prong, would ask, is there a reasonable likelihood that the district court would have admitted the evidence notwithstanding Rule 403? And I would submit that Mr. Hernandez has not shown that there's a reasonable likelihood, in large part because given all the facts that were admitted, the undisputed fact that he was crying, that he was upset, to use the words that his attorney used in cross-examining the Sergeant Seal and Detective Snyder, he was, quote, very emotional, close quote. The only real purpose of admitting video of him crying is to influence the emotions of the jury, which is the type of unfair prejudice Rule 403 is designed to protect. I think I agree with you that it's a better fit under the third prong than the first, but still, is the government aware of any cases where we've done an analysis of the reasonable probability under the third prong by reference to something as discretionary as a determination like Rule 403? I mean, is that just some, are you aware of any case where that crosswalk has been made? To be perfectly honest, I'm not aware of any case, Your Honor, and I will say that's not where I would necessarily have to hang my head on or hang my argument on the third prong. I think that's one way of getting to the third prong. I think the second way of getting to the third prong is to look what this Court did in Pierce, what the Second Circuit did in Thiam, the Seventh Circuit did in Haddad, and the Ninth Circuit did in Lopez, which explained in each of those cases that any error, and many of those were preserved errors, any error was harmless because the information was presented to the jury through witness testimony. And here, pages 69 to 72, you had Sergeant Seale testifying that Mr. Hernandez was crying during the trip back and clarified upon cross-examination that he said he was, quote, in fear of that his mother, who is in Mexico, would be harmed. And you had page 92, where Detective Snyder, in responding to cross-examination, testified that Mr. Hernandez was emotional during the interview. He was asked that, and he said yes, and then inserted that he was several times. He confirmed that he was crying. Mr. Craig, Mr. Crager, isn't some aspect of completeness the proposition that an actual video of what was happening is much better than an oral recitation from an adverse witness about what was happening? And for completeness, there ought to be some thumb on the scale in favor of the video?  Your Honor, I push back and respectfully know I don't think, at least rule 106 in the there might be an argument about the best evidence rule, that video being the better evidence. The rule says that, in fairness, ought to be considered at the same time. Now, if a video of what actually happened is proposed, isn't that a lot better than a witness's recitation and comes within that phraseology of 106? So, two points in response, Your Honor. First, the fairness that rule 106 talks about, as this court has explained, has to do with correction of misimpressions or some sort of misstatement, something along those lines, not that there's better, more compelling evidence. We can see this entering the second point in this court's decision in Williston, where the government admitted 24, actually admitted portions of the video, 24 minutes worth of clips from a 90-minute interview, and the defendant sought to admit clips from the same interview, arguing that they would have provided a more complete picture of what happened. Wait a minute, that's different. That's a selection of video. I'm asking if the video is available and is kept out, and all you have is just a cold recitation of the record from an adverse witness about what happened, isn't, in fairness, the video should be allowed in? Well, Andrew, I think if I can finish talking about Williston, that answers your question. So, in Williston, the district court did allow the defendant to ask certain questions on cross-examination to get some of the information that he sought to be admitted. He didn't allow him to play clips, but he was allowed to ask questions. And in Williston, the defendant argued that that violated the rule of completeness, which I think is the very situation you're positing. And this court said that the approach offered by the defendant didn't satisfy Rule 106's requirements that the additional statements be offered to clarify or explain misleading evidence admitted by the other party. But in that case, the government offered video and the defendant wanted more portions of video. And I think Judge Murphy's question, if I'm understanding it correctly, is here we have testimony and the defense wants video. And isn't, in fairness, that video properly within the scope of exactly what Rule 106 contemplates? Well, I do think that a court could exercise the very broad discretion in applying the vague fairness tests to allow that. I mean, I'm not saying it would be an abuse of discretion to allow that, but it is, as this court explained in Harry, it is very broad discretion that the court has. And this is why I point back to Williston, because, yes, the government played videos. And you would think if the government played videos, then fairness at its heart would probably allow the defendant to play videos rather than to elicit, at least based on the concerns that have been expressed, the cold testimony. But here, the government only admitted cold testimony on its behalf. The fairness would be even less to say that the defendant can also only offer testimony. One thing, one other thing I would point to, the entire reasoning, at least that Mr. Lund has suggested that these videos should have come in, in fairness, and so the jury could see that he was crying about his mother. But as Sergeant, or excuse me, Detective Snyder explained, it would be speculation to know what he was crying about, because the only person who can truly explain that is the defendant. And at pages 125, 126, 133, and 140 of the record on, volume three of the record on appeal, the defendant did just that. He explained it. He explained that he was worried about his mother, that he was shaken up because of his mother, that he was schizophrenic because what could have happened to his mother, and he was already panicking and completely nervous about what was happening to his mother. In addition to the fact that what was, and I see that I'm running out of time, so unless the court has any further questions, I'd ask that you affirm the judgment in the sentence below. Thank you. Thank you, counsel. Does Mr. Lund have any time remaining?  No, he doesn't. Okay. Thank you, counsel, for your helpful arguments. We will submit the case.